**COMMONWEALTH OF KENTUCKY**
**PERRY CIRCUIT COURT**
**CASE NO. 21-CI-00221**
*FILED ELECTRONICALLY*

**ASHOKKUMAR R. PATEL, ET AL.**                                    **PLAINTIFFS**

v.                           <u>**PLAINTIFFS' SUPPLEMENT TO**</u>
                  <u>**MOTION FOR SANCTIONS AGAINST LALAJI DEFENDANTS**</u>

**GRAM RESOURCES, INC., ET AL.**                                  **DEFENDANTS**

**\*\*\*\*\* \*\* \*\* \*\*\*\*\***

Come Plaintiff, Ashokkumar R. Patel, M.D. and Plaintiff, Mahender Pampati, M.D., by counsel, and in further support to their Motion For Sanctions of record herein attach hereto and make a part hereof as Exhibit 1, the Affidavit of Satish Patel, M.D.

                              Respectfully submitted,

                              /s/ Robert E. Maclin, III
                              Robert E. Maclin, III, KBA #43025
                              Luke Morgan, KBA #83181
                              McBrayer PLLC
                              201 East Main Street, Suite 900
                              Lexington, Kentucky 40507
                              remaclin@mcbrayerfirm.com
                              lmorgan@mcbrayerfirm.com
                              egreen@mcbrayerfirm.com
                              *Counsel for Plaintiff, Ashokkumar R. Patel, M.D and*
                              *Plaintiff, Mahender Pampati, M.D.*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing has been served, on this 10th day of May, 2023, via the Kentucky Courts e-filing system and electronically upon the following:

R. Aaron Hostettler, Esq.                    Barry D. Hunter, Esq.
Jay Milby Ridings, Esq.                      Frost Brown Todd PLLC
Kelsey Lee Bryant, Esq.                      250 West Main Street, Suite 2800
Hamm, Milby & Ridings, PLLC                  Lexington, KY 40508
120 North Main Street                        bhunter@fbtlaw.com
London, KY 40741                             *Counsel for Defendant, William Crenshaw*
aaron@hmrkylaw.com

1

jridings@hmrkylaw.com
kelsey@hmrkylaw.com
crystal@hmrkylaw.com
*Counsel for Defendants, Gram Resources, Inc., Hazard Radiology Associates, Inc., TRG Holdings G & H, LLC, The Radiology Group, LLC, and Anand Lalaji, M.D.*

Courtesy Copy Via Email
To Hon. Kimberly Childers
c/o AngelaShort@kycourts.net

*/s/ Robert E. Maclin, III*
Robert E. Maclin, III (KBA #43025)

# EXHIBIT 1

**ASHOKKUMAR R. PATEL, M.D. ET AL. PLAINTIFFS**

**v.        AFFIDAVIT OF SATISH PATEL, M.D.**

**GRAM RESOURCES, INC.   ET AI.    DEFENDANTS**

\* \* \* \* \* \* \*

Comes the Affiant, Satish Patel, M.D. and after being duly sworn to tell the truth, states the following:

1. I am more than 18 years of age and have personal knowledge of the statements made in this affidavit;

2. I am a radiologist in Pennsylvania and have worked here for approximately 30 years, I own a radiology business and have received radiology services  from Anand Lalaji and his radiology business called TRG;

3. I have received many text messages from Dr. Lalaji, and got one from him on Friday, May 5, 2023. A true and correct copy of  text is attached as Exhibit A;

4. I interpreted Dr. Lalaji's text message as an effort by him to intimidate me when he said that my testimony in this lawsuit "is causing a massive conflict of interest in regards to our contract with you[;]"

5. I do not understand what Dr. Lalaji means by "conflict of interest" because my contract is simply to provide accurate radiologic studies. Dr. Lalaji is trying to influence what I say or make me unwilling to testify by linking the contract I have with him to my testimony;

6. My testimony in this case is about how radiologists in some rural parts of the United States conduct  readings and billing in some circumstances.

FURTHER AFFIANT SAYETH NAUGHT.

_____  *Satish dPatel MD*

**COMMONWEALTH OF PENNSYLVANIA)**

M.D. this the ___ day in _____ 202_.

_Carol Ann Eustice_

NOTARY PUBLIC, STATE AT LARGE,
PENNSYLVANIA

My Commission Expires: _9-21-26_
Notary ID: _1046764_

2

Commonwealth of Pennsylvania - Notary Seal
Carol Ann Eustice, Notary Public
Luzerne County
My commission expires September 21, 2026
Commission number 1046764
Member, Pennsylvania Association of Notaries

# EXHIBIT A

17:15



3 People

I have been advised by our attorneys to reach out to you to obtain clarifying information before any decision is made regarding TRG's contract with RAWV.

Please provide in writing what your involvement is with the matter in KY.

Thanks.

Anand P. Lalaji MD
CEO
The Radiology Group LLC

17:15



3 People

Satish

I have just heard some disturbing news about your participation and involvement in our litigation with Ashok Patel. As well as Mansee's involvement?

You can see how this is causing a massive conflict of interest in regards to our contract with you.

I have been advised by our attorneys to reach out to you to obtain clarifying information

  Text Message    Text Message  

COMMONWEALTH OF KENTUCKY
PERRY CIRCUIT COURT
CASE NO. 21-CI-00221
*FILED ELECTRONICALLY*

ASHOKKUMAR R. PATEL, ET AL.                                    **PLAINTIFFS**

v.          **PLAINTIFFS' SECOND SUPPLEMENT TO**
     **MOTION FOR SANCTIONS AGAINST LALAJI DEFENDANTS**

GRAM RESOURCES, INC., ET AL.                                   **DEFENDANTS**

***** ** ** *****

Come Plaintiff, Ashokkumar R. Patel, M.D. and Plaintiff, Mahender Pampati, M.D., by

counsel, and in further support to their Motion For Sanctions of record herein attach hereto and

make a part hereof as Exhibit 1, a fully complete copy of the Affidavit of Satish Patel, M.D.

Respectfully submitted,

/s/ Robert E. Maclin, III
Robert E. Maclin, III, KBA #43025
Luke Morgan, KBA #83181
McBrayer PLLC
201 East Main Street, Suite 900
Lexington, Kentucky 40507
remaclin@mcbrayerfirm.com
lmorgan@mcbrayerfirm.com
egreen@mcbrayerfirm.com
*Counsel for Plaintiff, Ashokkumar R. Patel, M.D and*
*Plaintiff, Mahender Pampati, M.D.*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served, on this 10th day of
May, 2023, via the Kentucky Courts e-filing system and electronically upon the following:

R. Aaron Hostettler, Esq.              Barry D. Hunter, Esq.
Jay Milby Ridings, Esq.                Frost Brown Todd PLLC
Kelsey Lee Bryant, Esq.                250 West Main Street, Suite 2800
Hamm, Milby & Ridings, PLLC            Lexington, KY 40508
120 North Main Street                  bhunter@fbtlaw.com
London, KY 40741                       *Counsel for Defendant, William Crenshaw*
aaron@hmrkylaw.com

1

jridings@hmrkylaw.com
kelsey@hmrkylaw.com
crystal@hmrkylaw.com
*Counsel for Defendants, Gram Resources,*
*Inc., Hazard Radiology Associates, Inc., TRG*
*Holdings G & H, LLC, The Radiology Group,*
*LLC, and Anand Lalaji, M.D.*

Courtesy Copy Via Email
To Hon. Kimberly Childers
c/o AngelaShort@kycourts.net


*/s/ Robert E. Maclin, III*
Robert E. Maclin, III (KBA #43025)

# EXHIBIT 1

**COMMONWEALTH OF KENTUCKY**
**PERRY CIRCUIT COURT**
**CIVIL ACTION NO. 21-CI-00221**

**ASHOKKUMAR R. PATEL, M.D. ET AL. PLAINTIFFS**

**v.     AFFIDAVIT OF SATISH PATEL, M.D.**

**GRAM RESOURCES, INC.   ET Al.     DEFENDANTS**

* * * * * * *

Comes the Affiant, Satish Patel, M.D. and after being duly sworn to tell the truth, states the following:

1 I am more than 18 years of age and have personal knowledge of the statements made in this affidavit;

2. I am a radiologist in Pennsylvania and have worked here for approximately 30 years, I own a radiology business and have received radiology services from Anand Lalaji and his radiology business called TRG;

3. I have received many text messages from Dr. Lalaji, and got one from him on Friday, May 5, 2023. A true and correct copy of text is attached as Exhibit A;

4. I interpreted Dr. Lalaji's text message as an effort by him to intimidate me when he said that my testimony in this lawsuit "is causing a massive conflict of interest in regards to our contract with you[;]"

5. I do not understand what Dr. Lalaji means by "conflict of interest" because my contract is simply to provide accurate radiologic studies. Dr. Lalaji is trying to influence what I say or make me unwilling to testify by linking the contract I have with him to my testimony;

6. My testimony in this case is about how radiologists in some rural parts of the United States conduct readings and billing in some circumstances.

FURTHER AFFIANT SAYETH NAUGHT.

_____ Satih dipatel(u)_____

**COMMONWEALTH OF PENNSYLVANIA)**

)

COUNTY OF _Luzerne_ )

The foregoing Affidavit was subscribed, sworn to and acknowledged before me by Satish Patel, M.D. this the _10_ day of _____May_____, 2023.

_____

NOTARY PUBLIC, STATE AT LARGE,
PENNSYLVANIA

My Commission Expires: _9-21-26_
Notary ID: _1046764_

2

Commonwealth of Pennsylvania - Notary Seal
Carol Ann Eustice, Notary Public
Luzerne County
My commission expires September 21, 2026
Commission number 1046764
Member, Pennsylvania Association of Notaries

# EXHIBIT A

17:15



3 People

17:15

3 People

I have been advised by our attorneys to reach out to you to obtain clarifying information before any decision is made regarding TRG's contract with RAWV.

Please provide in writing what your involvement is with the matter in KY.

Thanks.

Anand P. Lalaji MD
CEO
The Radiology Group
LLC

Satish

I have just heard some disturbing news about your participation and involvement in our litigation with Ashok Patel. As well as Mansee's involvement?

You can see how this is causing a massive conflict of interest in regards to our contract with you.

I have been advised by our attorneys to reach out to you to obtain clarifying information

            

COMMONWEALTH OF KENTUCKY
33rd JUDICIAL DISTRICT
PERRY CIRCUIT COURT
CIVIL ACTION NO. 21-CI-00221
*SPECIAL JUDGE HON. KIMBERLY CHILDERS*

### *ELECTRONICALLY FILED*

ASHOKKUMAR R. PATEL, M.D.
and MAHENDER PAMPATI, M.D.                                          PLAINTIFFS


VS.


GRAM RESOURCES, INC.;
HAZARD RADIOLOGY ASSOCIATES, INC.;
ANAND LALAJI, M.D.; TRG HOLDINGS G & H, LLC;
THE RADIOLOGY GROUP, LLC and WILLIAM CRENSHAW          DEFENDANTS


### RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS FOR ALLEGED WITNESS INTIMIDATION AND TAMPERING
*** *** ***

Come now the defendants, Gram Resources, Inc; Hazard Radiology Associates, Inc.; Anand Lalaji, M.D.; TRG Holdings G & H, LLC; and The Radiology Group, LLC, by and through counsel, and for their Response to the plaintiffs' baseless Motion for Sanctions alleging witness intimidation and witness tampering, herewith state as follows:

On or about April 11, 2023, after the expert witness disclosure cutoff and after the discovery cut off in this case, as established within this Court's standing pretrial scheduling Order, the plaintiffs disclosed Dr. Satish Patel of Wilkes-Barre, PA as a radiologist whom the plaintiffs intend to call to testify at trial who is "*familiar with the billing requirements of rural providers for the last thirty (30) years approximately.*" See Exhibit 1. No additional information was provided concerning this out-of-time putative physician expert witness.

Dr. Satish Patel and his radiology practice group, Radiology Associates of Wyoming Valley, Inc. ("RAWV") are parties to an existing formal written contractual relationship with The Radiology Group, LLC ("TRG"), a defendant in the herein action. The parties agreement dates back to September 30, 2017, long before the plaintiffs became employees of Gram Resources and Hazard Radiology Associates. See the attached redacted contract at <u>Exhibit 2</u>. It appears that the plaintiffs have now resorted to interfering with TRG's pre-existing contractual business relationships trying to do further harm to the defendants, beyond the havoc they have already wreaked by their myriad misrepresentations, failures, and breaches. Now the plaintiffs are attempting to drum up last minute witnesses hundreds of miles away who will ostensibly testify against TRG in some unknown, undisclosed fashion.

The communication about which the plaintiffs protest was an email from Dr. Lalaji to Dr. Satish Patel dated May 5, 2023. A true copy of the email along with a history of some of the communications between Lalaji and Satish Patel and his associates at RAWV is attached and marked as collective <u>Exhibit 3</u>. This series of emails establishes without question that The Radiology Group and Satish Patel's physician group are and were in an ongoing contractual relationship at the time that the plaintiffs disclosed Dr. Satish Patel as a proposed witness in this case. Given that The Radiology Group and Satish Patel are and were under an existing contractual relationship at the time that plaintiffs made their untimely disclosure, Dr. Lalaji was under a duty as the managing member of TRG to make inquiry of Satish Patel as to what exactly he proposes to testify to in this case.

It is well established that every contract carries with it implied duties of good faith and fair dealing. Parties to contractual relationships operate under and within certain fiduciary duties of loyalty and good faith. <u>See for example Farmers Bank of Georgetown v. Wilmott Hardwoods</u>

Inc., 171 S.W.3d 4, 10 (Ky. 2005) recognizing that *"Within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out."* citing *Ranier v. Mount Sterling National Bank,* 812 S.W.2d 154, 156 (Ky.1991).

If Party 1 to an existing contract has reasonable cause for concern as to whether Party 2 is continuing to operate in good faith and to deal fairly, much less potentially now openly adverse to Party 1's interests, then Party 1 is certainly entitled to make inquiry into the circumstances. Indeed as managing member, Dr. Lalaji was under a duty to make inquiry under the circumstances to evaluate whether Satish Patel and his practice are now openly hostile and adverse to TRG's interests. Parties to commercial contracts are not required to carry on blindly; rather, they are entitled, even duty bound, to make inquiry under the circumstances. That is all that occurred here.

Dr. Lalaji had no intention of intimidating anyone. His contractual relationship with Satish Patel long predates the plaintiffs' present contractual interference. Dr. Lalaji was entitled and obligated to make inquiry under the circumstances so as to evaluate the viability of continuing in a fiduciary relationship of privity with a party who may now be directly hostile to TRG's interests. Dr. Lalaji's affidavit establishes clearly he had no intention to intimidate anyone, much less a fellow radiologist hundreds of miles away whose contractual relationship predated the plaintiffs' wrongdoing.

WHEREFORE, as the Motion for Sanctions is wholly without merit same should be overruled.

Respectfully submitted,

HAMM, MILBY & RIDINGS, PLLC
120 NORTH MAIN STREET

LONDON, KY 40741
EMAIL:  aaron@hmrkylaw.com
PHONE:  606-864-4126
FAX:  606-878-8144
*Counsel for defendants, Gram Resources, Inc;*
*Hazard Radiology Associates, Inc.; Anand Lalaji,*
*M.D.; TRG Holdings G & H, LLC; and*
*The Radiology Group, LLC*

BY: /s/ R. Aaron Hostettler
       HON. R. AARON HOSTETTLER
       HON. JAMES MILBY RIDINGS
       HON. KELSEY LEE BRYANT


**CERTIFICATE OF SERVICE:**

    I hereby certify that a copy of the foregoing Motion was electronically filed with the Clerk of the Court by using the E-filing system and that a true and accurate copy of the foregoing has been served via the E-filing system and/or via first class U.S. Mail on the following:


COPY  TO:

Hon. Robert E. Maclin III
Hon. Lisa English Hinkle
Hon. Luke Morgan
McBrayer, PLLC
201 East Main Street, Suite 900
Lexington, KY 40507

Hon. Barry Hunter
Frost Brown Todd, LLC
250 W. Main Street, Suite 2800
Lexington, KY 40507

Hon. Kimberly Childers, Judge
c/o angelashort@kycourts.net


        This _____ day of May 2023.


                    /s/ R. Aaron Hostettler
                    OF COUNSEL FOR ABOVE DEFENDANTS

**COMMONWEALTH OF KENTUCKY**
**PERRY CIRCUIT COURT**
**CASE NO. 21-CI-00221**

**ASHOKKUMAR R. PATEL, ET AL.**                                    **PLAINTIFFS**

v.              **PLAINTIFFS' SUPPLEMENTAL ANSWERS TO**
                **DEFENDANTS' FIRST SET OF INTERROGATORIES**

**GRAM RESOURCES, INC., ET AL.**                                    **DEFENDANTS**

***** ** ** *****

Come Plaintiffs, by counsel, acknowledging their duty to seasonably supplement their discovery responses to Defendants' requests hereby state the following. All prior objection, limitation and qualifications previously expressed are incorporated herein by reference.

**INTERROGATORY NO. 3**: Please identify by name and address all persons of whom you are aware of that have knowledge of any discoverable matter regarding the facts and circumstances surrounding any claim or defense in this action, and also provide a description of each person's knowledge or information and whether you may use such person as a witness.

**INITIAL ANSWER:**

**a. Plaintiffs and their spouses who may be contacted through Plaintiff's counsel; b. The other parties; c. All those persons listed by Defendants in their Answers to Plaintiffs' Interrogatories.**

**SUPPLEMENTAL ANSWER:**

**d. Satish Patel, M.D., of Wilkes-Barre, PA. Dr. Patel is a radiologist familiar with the billing requirements of rural providers for the last 30 years approximately.**

Respectfully submitted,

/s/ Robert E. Maclin, III
Robert E. Maclin, III, KBA #43025
Luke Morgan, KBA #83181
MCBRAYER PLLC

1


DEFENDANT'S EXHIBIT

201 East Main Street, Suite 900
Lexington, Kentucky 40507
remaclin@mcbrayerfirm.com
lmorgan@mcbrayerfirm.com
egreen@mcbrayerfirm.com
*Counsel for Plaintiff, Ashokkumar R. Patel
and Plaintiff, Mahender Pampati*

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing has been served this 11th day of April, 2023, by electronic mail and by first-class, U.S. Mail, Postage prepaid upon the following:

R. Aaron Hostettler, Esq.
Jay Milby Ridings, Esq.
Kelsey Lee Bryant, Esq.
Hamm, Milby & Ridings, PLLC
120 North Main Street
London, KY 40741
aaron@hmrkylaw.com
jridings@hmrkylaw.com
kelsey@hmrkylaw.com
crystal@hmrkylaw.com
*Counsel for Defendants, Gram Resources,
Inc., Hazard Radiology Associates, Inc., TRG
Holdings G & H, LLC, The Radiology Group,
LLC, and Anand Lalaji, M.D.*

Barry D. Hunter, Esq.
Frost Brown Todd PLLC
250 West Main Street, Suite 2800
Lexington, KY 40507
bhunter@fbtlaw.com
*Counsel for Defendant, William Crenshaw*

/s/ Robert E. Maclin, III
Robert E. Maclin, III
*Counsel for Plaintiff, Ashokkumar R. Patel
and Plaintiff, Mahender Pampati*

2

*\* only page 1 is filed in the record.*

# RADIOLOGY SERVICES AGREEMENT

THIS RADIOLOGY SERVICES AGREEMENT (the "Agreement") executed this 30th day of September 2017 to be effective as of January 26, 2018 (the "Effective Date") by and between RADIOLOGY ASSOCIATES OF WYOMING VALLEY, INC. ("Center"), and THE RADIOLOGY GROUP, LLC ("Provider").

W̲I̲T̲N̲E̲S̲S̲E̲T̲H̲:

WHEREAS, there are Center is located at     575 N River St, Wilkes Barre, PA 18764

and provides the space, equipment and facilities necessary to provide all radiology services;

WHEREAS, the Provider is in the business of providing physicians licensed to practice medicine without restriction in the State of PA and board certified in radiology ("Radiologists") and wishes to provide the desired radiology services to Center on the terms and conditions specified in this Agreement; and

WHEREAS, Center has determined that an exclusive relationship with Provider will best facilitate the delivery of efficient, effective and quality patient care; and

WHEREAS, the Center and the Provider wish to provide a full statement of their agreement in connection with Provider rendering radiology interpretation services; and

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions contained herein, and for mutual consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## ARTICLE I
## PROFESSIONAL SERVICES

**1.1   RADIOLOGISTS.**

(a)   The Provider shall be responsible for ensuring radiology coverage of the Center from 5pm – 8am weekdays and weekends, through the use of teleradiology. TRG can be available for emergency weekday and weekend 7am – 5pm overflow coverage if asked to cover.

(b)   The Provider shall be responsible for recruiting, contracting, scheduling, compensating and supervising all Radiologists.

**1.2   DUTIES.** The Provider shall perform the following professional teleradiology services for the Center during the term of this Agreement:

(a)   maintain such accurate and complete files and records as shall be deemed appropriate by the Center;

- 1 -



DEFENDANT'S EXHIBIT 2  tabbies

(b)    maintain the confidentiality of information made available as a result of services provided at the Center;

(c)    require the Radiologists to participate in Center programs including, without limitation, quality assurance, medical audit, risk management

(d)    Teleradiology Reporting Turn-around:  Provider shall use its best efforts to comply with the following turn-around schedule:

    i.    Non-Stat requests for interpretation submitted by the Center on Monday through Sunday during weekday Coverage Hours shall be read and the report transmitted to the Center on average within 12 hours of Provider's receipt of both the patient information and images from the Center.

    iv.    *Stat* 5 (ER) requests for interpretation submitted by the Center on Monday through Friday during weekday Coverage Hours and weekend Coverage Hours shall be read and the report transmitted to the Center on average within 30 minutes of Provider's receipt of both the patient information and images from the Center. "Stroke Protocol" cases, when following TRG guidelines for quicker interpretation, shall be read and the report transmitted to the Center on average within 30 minutes of Provider's receipt of both the patient information and images from the Center, and shall have a "priority" designation. Trauma, or multi body part CT, shall be sent to TRG separately by body part, and not as a "PANSCAN" If this is the case, trauma studies shall be read and the report transmitted to the Center on average within 30 minutes of Provider's receipt of both the patient information and images from the Center, and shall be given a "priority" designation.

**1.3    PREPARATION OF CLINICAL REPORTS.**  The Provider shall assist others at the Center in preparation of clinical reports.

## ARTICLE II
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE PROVIDER

**2.1      REPRESENTATIONS AND WARRANTIES.**  In performing services under this Agreement, the Provider covenants, represents and warrants that each Radiologist who performs any such services at the Center:

(a)      is licensed without restriction to practice medicine in the State of PA, and other states  ;

(b)      shall use his or her best and most diligent efforts and professional skills and judgment in rendering services under this Agreement and shall perform professional services and shall render care to patients in accordance with and in a manner consistent with appropriate standards and the ethics of the medical profession;

(c)      shall immediately upon discovery notify the Center of any denial, suspension, revocation or curtailment of licensure or certification status, Medical Staff membership or clinical privileges held by the Radiologist with any state, practice or healthcare facility;

(d)      has never been convicted of a crime related to healthcare fraud, been found liable in any civil matter arising out of alleged violation of any federal or state healthcare law, statute, rule or regulation, has never been excluded from or otherwise subject to any penalties, fines, assessments or sanctions arising out of Provider's or any such Radiologist's participation in the federal Medicare or a state Medicaid program;

**2.2      STANDARD OF PRACTICE.**  The standard of medical practice employed by the Provider and each Radiologist shall be consistent with the facilities available and with the generally prevailing standards established in the medical community of which the Center is a part.

**2.3      NO REQUIREMENT TO REFER.**  While performing services under this Agreement, nothing in the Agreement is to be construed to restrict a Radiologist's professional judgment to use another medical facility where necessary or desirable in order to provide proper and appropriate treatment or care to a patient or to comply with the wishes of the patient or patient's family.

## ARTICLE III
## OBLIGATIONS OF THE CENTER

**3.1      SUPPORT.**  Center shall ensure that it utilized radiology imaging equipment and systems to ensure the images transmitted to Provider are of sufficient image quality as to readable as determined in the reasonable judgment of Provider

**3.2      CLAIMS.**  The Center shall cooperate with the Provider's insurance carriers, risk managers, and/or their designees regarding any legal claims, investigations or lawsuits involving the services provided hereunder and shall immediately notify the Provider upon receipt of notification of any such claim, investigation

- 3 -

or lawsuit and, except when privileged, shall permit the Provider to review Center's records attributable to the Provider's duties under this Agreement, upon reasonable prior notice to the Center.

## ARTICLE IV
## FEES, BILLING, COLLECTION AND REMUNERATION

**4.1     BILLING.**  The Center shall be solely responsible for billing for the facility and professional elements of the services rendered to Center's patients. The Center shall bill patients, their patients' guarantor, third party payors and collect fees for services to patients and will be responsible at its own expense for such billing and fee collection.  The Center will be responsible for billing patients, its patients' guarantors and third party payors for the use of Center facilities, equipment and supplies. Each party hereto will cooperate with the other party in maintaining records to facilitate accurate reimbursement and payment.  The Provider shall file with the Center a record of all Center services rendered to patients.   The Center is solely responsible to pursue collection of all claims for reimbursement.

**4.2     LIMITATION OF BILLING.**  Professional services to patients for which the Center bills shall be personally furnished to the individual patient, shall contribute directly to the diagnosis or treatment of the individual patient, shall be of a type ordinarily requiring performance by a physician, and shall be identifiable, direct, and discrete diagnostic and therapeutic services to an individual patient.  The purpose and intent of this subparagraph is to prohibit the Provider from causing the Center to violate the terms of its Medicare and Medicaid agreements and applicable Medicare and Medicaid regulations.

**4.3.     REMUNERATION TO PROVIDER**. Center further agrees to reimburse the Provider for each radiological   interpretation   pursuant   to   this   Agreement   according   to   the   following   fee   schedule.   All reimbursement below is inclusive of transcription costs.

FEE SCHEDULE:

Modality Fee per Procedure

(a)     Provider shall submit an invoice to Center once a month setting forth the number and type of study for which Provider is due remuneration from the Center.

(b)     Center shall pay the invoice in full within 20 business days from its receipt of the  invoice. Any discrepancies after approval by TRG, shall be reflected in the following month's invoice and

cannot delay payment of current month.  Provider shall reserve the right to add a charge of 1.5 percent (1.5%) per month for any invoice that is not paid within 30 days.  Such charge will begin to run on the 31st day following the date of the invoice and continues to the date of the payment in full.

**4.4    TIME RECORDS.**  The Provider shall, and shall require each Radiologist to follow Center procedure for the maintenance of complete and accurate records of time spent providing services under this Agreement.

### ARTICLE V
### RECORDS

**5.1    ACCESS TO RECORDS.**  If it is ultimately determined that § 952 of the Omnibus Reconciliation Act of 1980 applies to this Agreement, then until the expiration of four (4) years after the furnishing of services provided under this Agreement, the Provider will make available to the Secretary of the United States Division of Health and Human Services, the United States Comptroller General, and their representatives, this Agreement and all books, documents and records necessary to certify the nature and extent of the costs of those services.  If the Provider carries out the duties of this Agreement through a subcontract worth $10,000 or more over a twelve-month period with a related organization, the subcontract will also contain an access clause to permit access by the Secretary, Comptroller General, and their representatives to the related organization's books, documents and records.

### ARTICLE VI
### INSURANCE AND INDEMNIFICATION

**6.1    MINIMUM INSURANCE COVERAGE.**  The Provider shall purchase and maintain at its expense professional liability insurance coverage from a commercial insurance company licensed to transact insurance in the State of PA in an amount equal to the greater of (i) one million dollars ($1,000,000) per claim and three million dollars ($3,000,000) in the aggregate per year.  On execution of this Agreement and thereafter annually or on reasonable request, the Provider shall provide the Center with a certificate of insurance or other written instrument acceptable to the Center evidencing purchase of the requisite Minimum Coverage.  The Provider shall notify the Center at least thirty (30) days prior to the voluntary cancellation or termination of the Minimum Coverage or any change in insurance companies and immediately upon receipt of any notice of involuntary cancellation or termination of the Minimum Coverage.

**6.2    CONTINUING COVERAGE.**

    (a)    blank

    (b)    If this Agreement expires or is terminated for any reason, or if any Radiologist providing services under this Agreement has his or her contract, employment or other relationship with the Provider terminated for any reason, then the Provider shall either:

(i)    maintain, with an insurer licensed to transact insurance in the State of PA, prior acts coverage with policy limits at least equal to the minimum required of physicians to maintain their membership on the Medical Staff of the Center at the time of such termination and with a retroactive date sufficient to cover any claims arising out of acts which occurred from the Effective Date of this Agreement through and including the date of such termination; or

(ii)    obtain an extended reporting endorsement (tail coverage) from an insurer licensed to transact insurance in the State of PA and acceptable to the Center for at least three (3) years from the date of such termination.

(c)    The Provider shall annually, or on reasonable request, provide the Center with a certificate of insurance or other written instrument acceptable to the Center evidencing purchase and maintenance of the requisite continuing coverage.

**6.3    INDEMNIFICATION.**  The Provider agrees to indemnify, defend and hold the Center, and its officers, directors, employees, agents, successors and assigns (collectively the "Indemnified Center Party") harmless from and against any claim, damage, loss (including any amounts paid in compromise or settlement of disputed claims), expenses, liability, obligation, action or cause of action, including reasonable attorneys' fees and all costs of investigation (collectively the "Indemnified Claims"), which the Indemnified Center Party may sustain, pay, suffer or incur by reason of any act, omission or negligence of the Provider, Provider's contractors, agents or employees or any Radiologist in performing services under this Agreement.   Attorneys' fees shall include not only those fees incurred in connection with investigating and defending the Indemnified Claims, but also all attorneys' fees incurred by the Center in prosecuting and collecting this indemnity.

The Center agrees to indemnify, defend and hold the Provider, and its officers, directors, employees, agents, successors and assigns (collectively the "Indemnified Provider Party") harmless from and against any claim, damage, loss (including any amounts paid in compromise or settlement of disputed claims), expenses, liability, obligation, action or cause of action, including reasonable attorneys' fees and all costs of investigation (collectively the "Indemnified Claims"), which the Indemnified Provider Party may sustain, pay, suffer or incur by reason of any act, omission or negligence of the Center and/or Center's contractors, agents or employees. Attorneys' fees shall include not only those fees incurred in connection with investigating and defending the Indemnified Claims, but also all attorneys' fees incurred by the Provider in prosecuting and collecting this indemnity.

**ARTICLE VII**
**STATUS OF PARTIES**

**7.1    INDEPENDENT CONTRACTOR STATUS.**  It is mutually understood and agreed that the Provider may engage employees, agents and independent contractors in order to facilitate its performance of the professional services, duties and obligations contemplated by this Agreement.   Such persons shall be the employees, agents or independent contractors of the Provider, not the Center, and such persons shall report to and, if applicable, be subject to the control of the Provider, not the Center.   The Center shall neither have nor exercise any control or direction over the methods or manner by which the Provider's personnel perform their

professional services and functions.  Except for requiring the coverage of services called for in this Agreement, the Center shall not set nor shall it have the right to set, the specific working hours of the Provider's personnel. The standards of medical practice and medical duties of these persons shall be determined by the Medical Staff of the Center.  These persons shall not be subject to any procedures applicable to Center employees, nor shall they be entitled to employee benefits including vacation pay, sick leave, retirement benefits, Social Security, Workers' Compensation, disability or unemployment insurance benefits that may be provided to the Center's employees.

7.2    **PAYMENT OF TAXES.**  The Provider acknowledges that it will have sole responsibility for the payment of all federal, state and local estimated, withholding and employment taxes arising out of its relationship with and the performance of the professional services for the Center.

7.3    **COMPLIANCE WITH LAWS**

(a)    The parties acknowledge and agree that it has been, it is, and it will continue to be their intent to comply fully with all applicable federal, state, and local laws, statutes, rules and regulations, including, but not limited to, the federal Anti-kickback Statute, Stark II, the False Claims Act and the Administrative Simplification provisions of the Healthcare Insurance Portability and Accountability Act of 1996, Title II, Subtitle F and the final regulations promulgated thereunder (for purposes herein, collectively referred to as "HIPAA").  The parties expressly acknowledge and agree that it is not a purpose nor a requirement of this Agreement to either (1) solicit, require, induce or encourage the payment of remuneration in return for the referral of any patient or for the purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering, any good, facility, service or item for which payment may be made, in whole or in part, under any federal or state health care program or for purchasing; or (2) offer or pay any remuneration in return for the referral of an individual for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program.  The parties further acknowledge and agree that it is the intent of the parties to comply with the applicable safe harbor regulations to the federal Anti-kickback Statute and the exceptions to Stark II to the fullest extent possible. The parties hereto represent and warrant that compensation paid to the Provider is not tied to the value or volume or other business generated by referring patients to the Center.

(b)    The Center and the Provider acknowledge their obligations under the Privacy Regulations and the Security Regulations promulgated pursuant to HIPAA and agree to comply with the obligations set forth in the Business Associate Addendum, attached hereto as **Exhibit "A"** and incorporated by this reference.

- 7 -

## ARTICLE VIII
## TERM AND TERMINATION

**8.1     TERM**.  This Agreement shall become effective on January 26, 2018 (the "Effective Date") and shall remain in full force and effect until the 1st day of February, 2019, unless otherwise earlier terminated as provided in this Article VIII (the "Initial Term").  Following the Initial Term, this Agreement shall automatically renew for successive term of one (1) year duration each (the "Renewal Terms"), unless otherwise earlier terminated as provided in this Article VIII. ***TRIAL period: During the first 90 days of the contract, is known as the "trial" period. During this period an evaluation will occur. If the hospital or a majority of referring physicians have some major concern that would ultimately hurt our overall business, the contract would end at the end of the trial period. A monetary penalty of 10,000.00 USD will be paid to TRG. This clause is only reserved for Catastrophic circumstances where there is material proof that "Radiology Associates of Wyoming Valley" will suffer irreparable damage to their business, if TRG continues to interpret for them.***

**8.3     TERMINATION WITHOUT CAUSE**.   Either party may terminate this Agreement without cause by giving (120) days prior written notice to the other of such intention to terminate.  The party that did not terminate the Agreement shall have the right to accelerate termination of the Agreement with thirty (30) days written notice to the initial terminating party.

**8.4     TERMINATION FOR CAUSE**.  Either party may immediately terminate this Agreement upon the occurrence of any one or more of the following events:

    (a)     Material breach of this Agreement by the other party that is not cured within thirty (30) days after written notice of the breach is provided to the other party,

    (b)     The Provider or any Radiologist has his or her license to practice medicine in the State of PA limited, withdrawn, curtailed, revoked or suspended;

    (c)     Provider or a Radiologist breaches any material representation, warranty or duty imposed under this Agreement;

    (d)  The Provider is excluded from either the Medicare or Medicaid program, the Provider is convicted of a Medicare or Medicaid program offense; pleads guilty or nolo contendere to criminal charges arising out of an alleged Medicare or Medicaid program violation; or, is held civilly liable for or settles a civil matter in which it is alleged that Provider violated a state or federal health care statute, law, rule or regulation specifically including, but not limited to, the federal Anti-Kickback Statute, Ethics in Patient Referral Act of 1989, as amended ("Stark II Statute"), or the civil False Claims Act.

    ***Individual Radiologists: Center has the ability to ask for removal from "Interpretation" a radiologist that has consistently made significant errors in quality resulting in consistent True QA results. In these circumstances, TRG will replace such radiologist when the new radiologist becomes credentialed.***

## ARTICLE IX
## MISCELLANEOUS

**9.1    RESTRICTIVE COVENANTS:**

A.    **Non-solicitation.**   Each party agrees that for a period of two (2) years following the expiration or termination of the Initial or Renewal Terms of this Agreement or earlier termination for any reason, neither party shall on its behalf or on behalf of any individual or entity, hire, attempt to hire, or induce or attempt to induce any individual who is an employee of the other and with whom the other had contact during the year preceding such expiration or termination of this Agreement to terminate such employee's employment relationship.   This Section 9.1 (A) shall survive the expiration or termination of this Agreement.

B.    **Non-solicitation of Contractors.**   Center agrees that for a period of two (2) years following the expiration or termination of the Initial or Renewal Terms of this Agreement or earlier termination for any reason that it shall not enter into any agreement for services with any physician providing services to Center under this Agreement.   This prohibition is limited to the type of services described in Article I of this Agreement.   This Section 9.1 (B) shall survive the expiration or termination of this Agreement.

C.    TRG is prohibited from contracting directly with Wilkes Barre General Hospital during the course of this contract as well as for a period of 2 years following expiration or termination of this contract.

**9.2    NOTICES.**   Notices required to be given under the agreement shall be mailed or delivered to the parties at the following addresses:

**If to the Provider:**    The Radiology Group, LLC
3340 Peachtree Rd NE
Suite 2025
Atlanta, GA 30326
Attention:  Anand P. Lalaji MD

**If to the Center:** Radiology Associates of Wyoming Valley, Inc, P.O. Box 99, Dallas, PA  18612

or such other addresses as the parties shall inform each other of in writing.  In the absence of clear and convincing evidence overcoming such presumption, a notice sent by mail pursuant to the above shall be deemed received by the party to whom sent on the third (3rd) business day next following the date of mailing.  A notice personally delivered shall be deemed received by the party to whom sent on the date of delivery.

**9.3    AMENDMENTS.**  Any amendment to this Agreement shall not be operative or valid unless the same is reduced to writing and approved by the parties hereto.

**9.4    ASSIGNABILITY.**  Neither party shall/may assign any of its rights or obligations under this Agreement without the express written consent of the other party.

**9.5    SEVERABILITY AND TERMINATION PROVISIONS.**  If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws in effect during the term of this Agreement, the legality, validity or enforceability of the remaining provisions of this Agreement shall not be affected thereby, and in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be legal, valid and enforceable.

**9.7    ENTIRE AGREEMENT.**  This Agreement constitutes the full contract and agreement of the parties, superseding all prior or contemporaneous agreements, either oral or written.

**9.8    GOVERNING LAW.**  This Agreement and the construction and interpretation thereof shall be governed by the laws of the State of Georgia.

**9.9    NON-WAIVER.**  The failure of either party to exercise any of its rights under this Agreement for a breach thereof shall not be deemed to be a waiver of such rights or a waiver of any subsequent breach.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed by its duly authorized officers or representatives as of the day and year first above written.

Center:                                                      Provider:

Radiology Associates of Wyoming Valley, Inc      THE RADIOLOGY GROUP, LLC

By:_____          By:_____

Its:____President_____          Its:_____CEO_____

- 10 -

## EXHIBIT "A"

## BUSINESS ASSOCIATE ADDENDUM

This Agreement by and between The Radiology Group, LLC ("PROVIDER") and Radiology Associates of Wyoming Valley, Inc ("CENTER") is entered into on this 30th day of September, 2017, for the purposes of complying with the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 and the regulations promulgated thereunder, ("HIPAA") and the security provisions of the American Recovery and Reinvestment Act of 2009, Public Law 111-005 and the regulations promulgated thereunder, also known as the Health Information Technology for Economic and Clinical Health Act (the "HITECH Act").  PROVIDER and CENTER are collectively referred to as the "Parties."

**WHEREAS,** CENTER is a "Covered Entity" as that term is defined under HIPAA, which requires Covered Entities and certain of their service providers to enter into confidentiality agreements;

**WHEREAS,** PROVIDER may create on behalf of, or receive from, the CENTER or the CENTER's other service providers protected health information ("PHI"); and

**WHEREAS,** upon creation or receipt of such PHI, PROVIDER would be a "Business Associate" in relation to the CENTER, as that term is defined under HIPAA.

**NOW, THEREFORE,** in consideration of the premises and the mutual promises contained herein, CENTER and PROVIDER hereby agree as follows:

1. Capitalized Terms. All capitalized terms herein not otherwise defined shall have the meaning ascribed to such terms under HIPAA and the HITECH Act, as may be amended from time to time.

2. PROVIDER's Responsibilities with Respect to Use and Disclosure of PHI.  PROVIDER hereby agrees, with regard to its Use and/or Disclosure of the PHI, to do the following:

   a. to Use and/or Disclose the PHI only:  (i) in conjunction with the services it provides to CENTER ("the Services"); (ii) consistent with the manner in which CENTER is permitted to Use and Disclose by 45 C.F.R. 164.502 (as amended from time to time) and/or 45 C.F.R.  § 164.512; (iii) for PROVIDER's proper management and administration; (vi) to fulfill any present or future legal responsibilities; (v) as otherwise permitted or required by this Agreement; (vi) as otherwise permitted or required by law; or (vii) as otherwise required by PROVIDER's ethical and legal responsibilities.

   b. to report to CENTER, in writing, any material Use and/or Disclosure of the PHI by PROVIDER that is not permitted or required by this Agreement of which PROVIDER becomes aware;

   c. to use commercially reasonable efforts to maintain the security of the PHI and to prevent its Use and/or Disclosures contrary to this Agreement; and

    d.  to require all of PROVIDER's subcontractors and agents utilized in providing the Services which Use and/or Disclose the PHI, to agree to adhere to equivalent restrictions and conditions on the Use and/or Disclosure of the PHI that apply to PROVIDER pursuant to this Agreement.

3.  <u>Safeguards</u>.  PROVIDER shall employ appropriate administrative, technical and physical safeguards, consistent with the size and complexity of PROVIDER's operations, to protect the confidentiality of PHI and to prevent the use or disclosure of PHI in any manner inconsistent with the terms of this Agreement. Pursuant to the HITECH Act, as of February 17, 2010, PROVIDER shall be in compliance with 45 C.F.R. §§ 164.308, 164.310, 164.312, 164.316, which includes PROVIDER's obligation to have written policies and procedures in place to document its administrative, technical and physical safeguards.

4.  <u>Access Requests</u>. The Parties acknowledge that PROVIDER only maintains portions of the Designated Record Set that are also in CENTER's possession, such that CENTER can respond to access requests in compliance with 45 C.F.R. § 164.524 without accessing records in PROVIDER's control. CENTER shall provide PROVIDER with written notification in the event that the forgoing acknowledgement is inaccurate, which shall obligate PROVIDER to respond to CENTER's requests to access those records identified so that CENTER can comply with 45 C.F.R. § 164.524. Notwithstanding the foregoing, PROVIDER shall not permit access to any record if such access would violate PROVIDER's ethical responsibilities, work-product privilege, or the attorney-client privilege. The Parties acknowledge that CENTER retains the right to waive its attorney-client privilege with regard to its own records and to expressly instruct PROVIDER to provide access to those records as a result of that waiver. In the event CENTER decides to waive its attorney-client privilege, CENTER shall provide PROVIDER with written notice of that waiver before PROVIDER shall act on such a decision. CENTER acknowledges and understands that such a waiver may result in a waiver that extends beyond the records at issue.

5.  <u>Amendment Requests.</u> PROVIDER shall process CENTER's requests for amendment of the PHI in PROVIDER's possession, solely upon CENTER's request and in a manner that allows CENTER to comply with 45 C.F.R. § 164.526 and in a manner that is consistent with the manner in which CENTER is amending the PHI in CENTER's possession.

6.  <u>Accounting of Disclosures</u>. The Parties agree that PROVIDER shall track and keep a record of all Disclosures of PHI, and that PROVIDER shall provide to CENTER the information necessary for CENTER to provide an accounting of Disclosures to individuals who request an accounting. PROVIDER shall inform CENTER of any Disclosure made: for public health purposes, regarding abuse, neglect or domestic violence; to a health oversight agency; in the course of a judicial or administrative proceeding; for law enforcement purposes; to coroners, medical examiners and funeral directors; to organ procurement organizations; for research; as required by law; to prevent a serious harm to health or safety; to military and veterans officials; or for workers' compensation purposes, provided that such an accounting does not cause PROVIDER to violate PROVIDER's ethical or legal responsibilities. In each case PROVIDER shall provide at least the following information with respect to each such Disclosure: (a) the date of the Disclosure; (b) the name of the entity or person who received the PHI; (c) a brief description of the PHI disclosed; (d) a brief statement of the purpose of such Disclosure which includes an explanation of the basis for such Disclosure. In the event that PROVIDER receives a request for an accounting directly from an individual, PROVIDER shall forward such request to CENTER in writing.

7.  <u>Requests from Secretary of Health and Human Services</u>. If PROVIDER receives a request, made by or on behalf of the Secretary of the United States Department of Health and Human Services (the "Secretary"),

requiring PROVIDER to make its internal books, and records relating to the Use and Disclosure of the PHI created or received by PROVIDER on behalf of CENTER available to the Secretary for the purpose of determining CENTER's and/or PROVIDER's compliance with the HIPAA, then PROVIDER promptly shall notify CENTER that PROVIDER has received such a request.

a. PROVIDER shall make its internal CENTERs that pertain solely to the protection of the PHI related to the CENTER available to the Secretary or the Secretary's authorized representative for purposes of determining CENTER's and/or PROVIDER's compliance with HIPAA.

b. Notwithstanding the foregoing, PROVIDER shall make such books and records available to the Secretary only to the extent that such action will not violate any legal or ethical obligations of PROVIDER, including but not limited to protecting attorney-client privileges and work-product privileges. In that regard, PROVIDER, to the maximum extent permitted by law, hereby reserves and retains any and all work product or other privileges or rights or ethical obligations. Nothing in this Section shall be construed to require PROVIDER to disclose or produce communications that are subject to attorney-client, work-product with respect to materials that analyze, evaluate or discuss the legal implications of the PHI, or other privileges or rights or ethical obligations. To the maximum extent permitted by law, CENTER hereby reserves and retains its attorney-client privileges in which CENTER has an interest with respect to PROVIDER's performance of its obligations under this Section. The Parties acknowledge that CENTER retains the right to waive its attorney-client privilege with regard to its own books and records and to expressly instruct (in writing) PROVIDER to provide the Secretary with those books and records as a result of that waiver. CENTER acknowledges and understands that such a waiver may result in a waiver that extends beyond the books and records at issue.

8. <u>Minimum Necessary</u>. CENTER shall provide, and PROVIDER shall request, Use and Disclose, only the minimum amount of PHI necessary to accomplish the purpose of the request, Use or Disclosure. The Parties acknowledge that the Secretary may issue guidance with respect to the definition of "minimum necessary" from time to time, and agree to stay informed of any relevant changes to the definition.

9. <u>Reporting of Security Breaches</u>. In the event of a "Breach" of any "Unsecured" PHI that PROVIDER accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds or uses on behalf of CENTER, PROVIDER shall report such Breach to CENTER as soon as practicable, but in no event later than ten (10) business days after the date on which the Breach is discovered. "Breach" shall mean the unauthorized acquisition, access, Use, or Disclosure of PHI which compromises the security or privacy of such information, except where an unauthorized person to whom the information is disclosed would not reasonably have been able to retain such information. "Unsecured PHI" shall mean PHI that is not rendered unusable, unreadable, or indecipherable to unauthorized individuals through the use of a technology or methodology specified by the Secretary (e.g., encryption). Notice of a Breach shall include: (i) the identification of each individual whose PHI has been, or is reasonably believed to have been, accessed, acquired, or disclosed during the Breach, (ii) the date of the Breach, if known, and the date of discovery of the Breach, (iii) the scope of the Breach, and (iv) PROVIDER's response to the Breach.

10. <u>Responsibilities of CENTER</u>. With regard to the Use and/or Disclosure of the PHI by PROVIDER, CENTER hereby agrees:

a. that the Uses and Disclosures of the PHI by PROVIDER pursuant to this Agreement are, at the time of execution and throughout the term of this Agreement will be, consistent with the form of notice of

- 13 -

privacy (the "Notice") that CENTER provides to individuals pursuant to 45 C.F.R. § 164.520.

b.  to notify PROVIDER, in writing and in a timely manner, of any arrangements permitted or required of CENTER under 45 C.F.R. parts 160 and 164 that may impact in any manner the Use and/or Disclosure of the PHI by PROVIDER under this Agreement including, but not limited to, restrictions on Use and/or Disclosure of the PHI as provided for in 45 C.F.R. § 164.522 agreed to by CENTER, and to hold PROVIDER harmless from the financial impact of any such agreement by CENTER;

c.  to obtain any consent or authorization that may be required under HIPAA or state law prior to furnishing the PHI to PROVIDER; and

d.  make all requests for Disclosure of the PHI and not allow third parties to contact PROVIDER to request the Disclosure of the PHI on CENTER's behalf.  The Parties acknowledge and agree that upon receipt of such a request from CENTER, and with CENTER's approval, PROVIDER may Disclose the PHI to the third party, provided that such Disclosure will not violate any legal or ethical obligations of PROVIDER, including but not limited to protecting attorney-client privileges and work-product privileges.

11.  Statutory or Regulatory Changes with respect to the PHI.  If PROVIDER's responsibilities set out herein should be altered as a result of any changes in HIPAA or the HITECH Act ("Additional Responsibilities"), PROVIDER shall make such changes to the Services provided that appropriate changes in the fees are agreed to by CENTER and PROVIDER.  If, in its reasonable discretion PROVIDER determines that the proposed, Additional Responsibilities have a material adverse financial effect on PROVIDER's interest in this Agreement, and PROVIDER and CENTER cannot come to agreement on fees and implementation schedules for the Additional Responsibilities, then PROVIDER or CENTER may terminate the Agreement upon thirty (30) days prior written notice to the other party.  Neither party shall assert any claim against the other party for monetary damages or equitable relief or otherwise for PROVIDER's failure to perform the Additional Responsibilities from the date of notice to PROVIDER of the Additional Responsibilities through the date agreed to by the parties for implementation of the Additional Responsibilities or, if PROVIDER or CENTER exercises a right to terminate the Agreement, through the termination date.

12.  Term.  Unless otherwise terminated as provided in Section 12, this Agreement shall become effective on the Effective Date and shall have a term that shall run concurrently with that of any oral or written agreement by PROVIDER to provide Services to CENTER and will terminate without any further action of the Parties upon the termination of all such agreements.

13.  Termination

a.  If either Party determines that the other Party has engaged in a pattern of activity that constitutes a material breach of the other Party's obligations under this Agreement, the non-breaching Party shall, within twenty (20) days of that determination, notify the breaching Party and the breaching Party shall have thirty (30) days from receipt of that notice to cure the breach or end the violation.  If the breaching Party fails to take reasonable steps to effect such a cure within such a time period, the non-breaching Party may terminate all or part of the service relationship.  In no event shall such termination have any effect on sums due from CENTER for any services provided by PROVIDER under the engagement.

b.  Where either Party has knowledge of a material breach by the other Party, and cure is not possible, the non-breaching Party shall terminate the portion of the arrangement for Services affected by the breach.

- 14 -

c. Where neither cure nor termination is feasible, the non-breaching Party shall report the violation to the Secretary.

14. Effect of Termination.  Upon the event of termination of this Agreement, PROVIDER agrees, where feasible, to return or destroy the PHI, which PROVIDER still maintains in any form.  Prior to doing so, PROVIDER further agrees, to the extent feasible, to request the destruction of the PHI that is in the possession of its subcontractors or agents.  CENTER understands that PROVIDER's need to maintain portions of the PHI in records for archival purposes related to memorializing advice provided can render return or destruction infeasible.  If in PROVIDER's opinion, it is not feasible for PROVIDER or any subcontractors to return or destroy portions of the PHI, PROVIDER shall, upon CENTER's written request, inform CENTER as to the specific reasons that make such return or destruction infeasible and limit any further use or disclosures to the purposes that make the return or destruction of those portions of the PHI infeasible.  CENTER agrees that the maintenance of such records does not create an ongoing attorney-CENTER relationship.

15. Third Party Beneficiaries.  Nothing in this Agreement shall be construed to create any third party beneficiary rights in any person.

16. Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original.  Facsimile copies thereof shall be deemed to be originals.

17. Informal Resolution.  If any controversy, dispute or claim arises between the Parties with respect to this Agreement, the Parties shall make good faith efforts to resolve such matters informally.

18. Limitation on Liability.  Neither Party shall be liable to the other party for any incidental, consequential or punitive damages of any kind or nature, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if the other Party has been advised of the possibility of such loss or damages.

19. Notices.  All notices, requests, approvals, demands and other communications required or permitted to be given under this Agreement shall be in writing and delivered either personally, or by certified mail with postage prepaid and return receipt requested, or by overnight courier to the party to be notified.  All communications will be deemed given when received.  The addresses of the parties shall be as follows; or as otherwise designated by any party through notice to the other party:

If to PROVIDER: The Radiology Group, LLC
3340 Peachtree Rd NE
Suite 2025
Atlanta, GA 30326
Attention: Anand P. Lalaji MD
If to CENTER: Radiology Associates of Wyoming Valley, Inc, P.O. Box 99, Dallas, PA 18612

20. Interpretation.  The provisions of this Agreement shall prevail over any provisions in any other agreements between PROVIDER and CENTER that may conflict or appear inconsistent with any provision of this Agreement.  This Agreement shall be interpreted as broadly as necessary to implement and comply with

HIPAA and the HITECH Act. The Parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies with and is consistent with HIPAA and the HITECH Act.

21. Negotiated Agreement. The Parties acknowledge and agree that this Agreement has been negotiated at arm's length between the Parties. CENTER acknowledges and agrees that PROVIDER is acting on its own behalf with respect to the negotiations, preparation and drafting of this Agreement, and that such negotiations shall not be construed as PROVIDER providing legal advice or counsel to CENTER.

22. Survival. Sections 4, 6, 13, 15, 17, 21 and 22 shall survive the termination of this Agreement.

[INTENTIONALLY LEFT BLANK]

**INTENDING TO BE LEGALLY BOUND,** the Parties hereto have duly executed this Agreement.

**Provider**

Signed: _____

A. Lalagi MD
CEO

Date: _____
10/4/17

**Center**

Signed: _____

SATISH D. PATEL, MD
PRESIDENT

Date: 10/4/17

Address: P.O. BOX 99
DALLAS, PA 18612

- 17 -

**Aaron Hostettler**

| | |
|---|---|
| **From:** | Aaron Hostettler |
| **Sent:** | Tuesday, May 9, 2023 10:09 PM |
| **To:** | Aaron Hostettler |
| **Subject:** | FW: screening mammograms |

**From:** Anand Lalaji <alalaji@theradiologygroup.org>
**Sent:** Friday, May 5, 2023 12:05:40 PM
**To:** SATISH PATEL <sdpatel@aol.com>
**Subject:** Re: screening mammograms

Satish

I have just heard some disturbing news about your participation and involvement in our litigation with Ashok Patel.  As well as Mansee's involvement?

You can see how this is causing a massive conflict of interest in regards to our contract with you.

I have been advised by our attorneys to reach out to you to obtain clarifying information before any decision is made regarding TRG's contract with RAWV.

Please provide in writing what your involvement is with the matter in KY.

Thanks.

Anand P. Lalaji MD
CEO
The Radiology Group LLC

**From:** SATISH PATEL <sdpatel@aol.com>
**Sent:** Wednesday, August 10, 2022 8:11:17 PM
**To:** Linda Bush <linda.bush@rawv.com>
**Cc:** Anand Lalaji <alalaji@theradiologygroup.org>
**Subject:** Re: screening mammograms

Can we have a conversation without those long disclaimers?

Satish Patel

> On Aug 9, 2022, at 3:39 PM, Linda Bush <linda.bush@rawv.com> wrote:

> Thank you. I will get back to you by tomorrow morning.

> Linda

> On Aug 9, 2022, at 3:34 PM, Anand Lalaji <alalaji@theradiologygroup.org> wrote:



DEFENDANT'S
EXHIBIT
3

1

I know it sounds picky however, I ould be able to get 47.00 through the CFO. 

**Anand Lalaji, MD**
*Chief Executive Officer*
*MSK Radiology*
**Office:** (404) 946-9641



https://www.linkedin.com/company/the-radiology-group/?viewAsMember=true



---

**From:** Linda Bush Hallen <linda.bush@rawv.com>
**Sent:** Tuesday, August 9, 2022 3:24 PM
**To:** Anand Lalaji <alalaji@theradiologygroup.org>
**Cc:** 'Satish Patel' <sdpatel@aol.com>
**Subject:** RE: screening mammograms

Thank you.  We will be sending 3D screening exams.  In light of our relationship, would you consider a rate of $45.00?  We've researched and found varying prices ranging between $25.00 and $50.00.  It's a fair rate especially considering the volume of studies we've been sending to you, combined with our excellent payment history.  If it's acceptable, we will start credentialing Tejal immediately.

Thank you,
Linda

**From:** Anand Lalaji <alalaji@theradiologygroup.org>
**Sent:** Tuesday, August 9, 2022 1:57 PM
**To:** Linda Bush <linda.bush@rawv.com>
**Cc:** Satish Patel <sdpatel@aol.com>
**Subject:** Re: screening mammograms

Our standard rate for 3D Screening is 55.00, 2D: 40.00

**Anand Lalaji, MD**

*Chief Executive Officer*

*MSK Radiology*

**Office:** (404) 946-9641



the
radiology
group

https://www.linkedin.com/company/the-radiology-group/?viewAsMember=true

**From:** Linda Bush <linda.bush@rawv.com>
**Sent:** Tuesday, August 9, 2022 10:30 AM
**To:** Anand Lalaji <alalaji@theradiologygroup.org>
**Cc:** Satish Patel <sdpatel@aol.com>
**Subject:** Re: screening mammograms

Yes, of course. Could we settle on a rate for this added service as it is not currently part of our contract.

Thank you,
Linda

> On Aug 9, 2022, at 9:54 AM, Anand Lalaji <alalaji@theradiologygroup.org> wrote:
>
> Ok Is there anyway to get Tejal credentialed? She is out head Mammo person
>
> Anand P. Lalaji MD
> CEO
> The Radiology Group LLC
>
> **From:** Linda Bush <linda.bush@rawv.com>
> **Sent:** Tuesday, August 9, 2022 8:59 AM
> **To:** Anand Lalaji <alalaji@theradiologygroup.org>
> **Cc:** Satish Patel <sdpatel@aol.com>
> **Subject:** Re: screening mammograms
>
> Good morning.
>
> Once we are caught up, I would say 30-50 daily, depending on our coverage that particular day.
>
> Linda
>
> > On Aug 8, 2022, at 5:45 PM, Anand Lalaji <alalaji@theradiologygroup.org> wrote:

What kind of volume are we talking about here?

**Anand Lalaji, MD**

*Chief Executive Officer*

*MSK Radiology*

Office: (404) 946-9641



https://www.linkedin.com/company/the-radiology-group/?viewAsMember=true



**From:** Linda Bush <linda.bush@rawv.com>
**Sent:** Monday, August 8, 2022 5:36 PM
**To:** Anand Lalaji <alalaji@theradiologygroup.org>
**Cc:** Satish Patel <sdpatel@aol.com>
**Subject:** Re: screening mammograms

Ok, thank you. Who should I speak with about adding this service?

Linda

> On Aug 8, 2022, at 5:15 PM, Anand Lalaji <alalaji@theradiologygroup.org> wrote:

> Yes we do.

> **Anand Lalaji, MD**

> *Chief Executive Officer*

> *MSK Radiology*

> Office: (404) 946-9641

4



the
radiology
group

https://www.linkedin.com/company/the-radiology-group/?viewAsMember=true



---

**From:** Linda Bush Hallen
<linda.bush@rawv.com>
**Sent:** Monday, August 8, 2022 4:01 PM
**To:** Anand Lalaji
<alalaji@theradiologygroup.org>
**Cc:** Satish Patel <sdpatel@aol.com>
**Subject:** screening mammograms

Hello Dr. Lalaji.

Does TRG offer reads for screening mammograms?

Thank you,
Linda

Linda B. Hallen, CRA
Business Manager
**Radiology Associates of Wyoming Valley, Inc.**
Linda.Bush@RAWV.com
570-586-5461 (phone)
570-586-5464 (fax)

This message is intended for the use of the addressee only and may contain information that is privileged and confidential. If you are not the intended recipient of this message, be notified that any dissemination or use of this message is strictly prohibited. If you have received this message in error, please delete all copies of the message and its attachments and notify the sender immediately.

COMPANY CONFIDENTIAL This email message including any attachments, may contain confidential and/or privileged information and is intended solely for the use of the intended recipient(s). Any unauthorized review, use, disclosure, distribution or copying

5

is prohibited. If you are not the intended recipient, kindly contact the sender by replying to this email and destroy and delete all copies of this message. Any distribution, dissemination or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

COMPANY CONFIDENTIAL This email message including any attachments, may contain confidential and/or privileged information and is intended solely for the use of the intended recipient(s). Any unauthorized review, use, disclosure, distribution or copying is prohibited. If you are not the intended recipient, kindly contact the sender by replying to this email and destroy and delete all copies of this message. Any distribution, dissemination or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

DISCLAIMER: This email and any files transmitted with it are privileged and confidential information and intended solely for the use of the individual or entity to which they are addressed. This transmission may contain protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). If you are not the intended recipient, please notify the sender by e-mail and delete the original message. Further, you are not to copy, disclose, or distribute this e-mail or its contents to any other person and any such actions are unlawful. This e-mail may contain viruses. THE RADIOLOGY GROUP has taken every reasonable precaution to minimize this risk, but is not liable for any damage you may sustain as a result of any virus in this e-mail. The recipient should check this email and any attachments for the presence of viruses. THE RADIOLOGY GROUP reserves the right to monitor and

review the content of all messages sent
to or from this e-mail address.

COMPANY CONFIDENTIAL This email message including
any attachments, may contain confidential and/or
privileged information and is intended solely for the use
of the intended recipient(s). Any unauthorized review,
use, disclosure, distribution or copying is prohibited. If
you are not the intended recipient, kindly contact the
sender by replying to this email and destroy and delete
all copies of this message. Any distribution,
dissemination or other use of the contents of this
message by anyone other than the intended recipient is
strictly prohibited.
COMPANY CONFIDENTIAL This email message including
any attachments, may contain confidential and/or
privileged information and is intended solely for the use
of the intended recipient(s). Any unauthorized review,
use, disclosure, distribution or copying is prohibited. If
you are not the intended recipient, kindly contact the
sender by replying to this email and destroy and delete
all copies of this message. Any distribution,
dissemination or other use of the contents of this
message by anyone other than the intended recipient is
strictly prohibited.

DISCLAIMER: This email and any files transmitted with it
are privileged and confidential information and
intended solely for the use of the individual or entity to
which they are addressed. This transmission may
contain protected health information as defined by the
Health Insurance Portability and Accountability Act of
1996 (HIPAA). If you are not the intended recipient,
please notify the sender by e-mail and delete the
original message. Further, you are not to copy, disclose,
or distribute this e-mail or its contents to any other
person and any such actions are unlawful. This e-mail
may contain viruses. THE RADIOLOGY GROUP has taken
every reasonable precaution to minimize this risk, but is
not liable for any damage you may sustain as a result of
any virus in this e-mail. The recipient should check this
email and any attachments for the presence of viruses.
THE RADIOLOGY GROUP reserves the right to monitor
and review the content of all messages sent to or from
this e-mail address.

COMPANY CONFIDENTIAL This email message including any
attachments, may contain confidential and/or privileged information
and is intended solely for the use of the intended recipient(s). Any
unauthorized review, use, disclosure, distribution or copying is
prohibited. If you are not the intended recipient, kindly contact the
sender by replying to this email and destroy and delete all copies of this

message. Any distribution, dissemination or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

COMPANY CONFIDENTIAL This email message including any attachments, may contain confidential and/or privileged information and is intended solely for the use of the intended recipient(s). Any unauthorized review, use, disclosure, distribution or copying is prohibited. If you are not the intended recipient, kindly contact the sender by replying to this email and destroy and delete all copies of this message. Any distribution, dissemination or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

DISCLAIMER: This email and any files transmitted with it are privileged and confidential information and intended solely for the use of the individual or entity to which they are addressed. This transmission may contain protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). If you are not the intended recipient, please notify the sender by e-mail and delete the original message. Further, you are not to copy, disclose, or distribute this e-mail or its contents to any other person and any such actions are unlawful. This e-mail may contain viruses. THE RADIOLOGY GROUP has taken every reasonable precaution to minimize this risk, but is not liable for any damage you may sustain as a result of any virus in this e-mail. The recipient should check this email and any attachments for the presence of viruses. THE RADIOLOGY GROUP reserves the right to monitor and review the content of all messages sent to or from this e-mail address.

COMPANY CONFIDENTIAL This email message including any attachments, may contain confidential and/or privileged information and is intended solely for the use of the intended recipient(s). Any unauthorized review, use, disclosure, distribution or copying is prohibited. If you are not the intended recipient, kindly contact the sender by replying to this email and destroy and delete all copies of this message. Any distribution, dissemination or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.
COMPANY CONFIDENTIAL This email message including any attachments, may contain confidential and/or privileged information and is intended solely for the use of the intended recipient(s). Any unauthorized review, use, disclosure, distribution or copying is prohibited. If you are not the intended recipient, kindly contact the sender by replying to this email and destroy and delete all copies of this message. Any distribution, dissemination or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

DISCLAIMER: This email and any files transmitted with it are privileged and confidential information and intended solely for the use of the individual or entity to which they are addressed. This transmission may contain protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). If you are not the intended recipient, please notify the sender by e-mail and delete the original message. Further, you are not to copy, disclose, or distribute this e-mail or its contents to any other person and any such actions are unlawful. This e-mail may contain viruses. THE RADIOLOGY GROUP has taken every reasonable precaution to minimize this risk,

but is not liable for any damage you may sustain as a result of any virus in this e-mail. The recipient should check this email and any attachments for the presence of viruses. THE RADIOLOGY GROUP reserves the right to monitor and review the content of all messages sent to or from this e-mail address.

COMPANY CONFIDENTIAL This email message including any attachments, may contain confidential and/or privileged information and is intended solely for the use of the intended recipient(s). Any unauthorized review, use, disclosure, distribution or copying is prohibited. If you are not the intended recipient, kindly contact the sender by replying to this email and destroy and delete all copies of this message. Any distribution, dissemination or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.
COMPANY CONFIDENTIAL This email message including any attachments, may contain confidential and/or privileged information and is intended solely for the use of the intended recipient(s). Any unauthorized review, use, disclosure, distribution or copying is prohibited. If you are not the intended recipient, kindly contact the sender by replying to this email and destroy and delete all copies of this message. Any distribution, dissemination or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

DISCLAIMER: This email and any files transmitted with it are privileged and confidential information and intended solely for the use of the individual or entity to which they are addressed. This transmission may contain protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). If you are not the intended recipient, please notify the sender by e-mail and delete the original message. Further, you are not to copy, disclose, or distribute this e-mail or its contents to any other person and any such actions are unlawful. This e-mail may contain viruses. THE RADIOLOGY GROUP has taken every reasonable precaution to minimize this risk, but is not liable for any damage you may sustain as a result of any virus in this e-mail. The recipient should check this email and any attachments for the presence of viruses. THE RADIOLOGY GROUP reserves the right to monitor and review the content of all messages sent to or from this e-mail address.

COMPANY CONFIDENTIAL This email message including any attachments, may contain confidential and/or privileged information and is intended solely for the use of the intended recipient(s). Any unauthorized review, use, disclosure, distribution or copying is prohibited. If you are not the intended recipient, kindly contact the sender by replying to this email and destroy and delete all copies of this message. Any distribution, dissemination or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.
COMPANY CONFIDENTIAL This email message including any attachments, may contain confidential and/or privileged information and is intended solely for the use of the intended recipient(s). Any unauthorized review, use, disclosure, distribution or copying is prohibited. If you are not the intended recipient, kindly contact the sender by replying to this email and destroy and delete all copies of this message. Any distribution, dissemination or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

COMMONWEALTH OF KENTUCKY
33rd JUDICIAL DISTRICT
PERRY CIRCUIT COURT
CIVIL ACTION NO. 21-CI-00221
*SPECIAL JUDGE HON. KIMBERLY CHILDERS*

### ***ELECTRONICALLY FILED***

ASHOKKUMAR R. PATEL, M.D.
and MAHENDER PAMPATI, M.D.                                        PLAINTIFFS


VS.


GRAM RESOURCES, INC.;
HAZARD RADIOLOGY ASSOCIATES, INC.;
ANAND LALAJI, M.D.; TRG HOLDINGS G & H, LLC;
THE RADIOLOGY GROUP, LLC and WILLIAM CRENSHAW          DEFENDANTS


### AFFIDAVIT OF ANAND LALAJI, M.D. IN RESPONSE TO SANCTIONS MOTION
*** *** ***

Comes now your affiant, Anand Lalaji, M.D., and for his Affidavit in response to plaintiffs' pending Motion for Sanctions alleging witness tampering and/or interference, herewith states under oath and upon penalty of perjury as follows:

1.    Your affiant is a licensed physician having been licensed to practice medicine for approximately 25 years and is board certified in radiology.   Your affiant is licensed to practice medicine in 16 states.

2.    Your affiant is a member of the Radiology Group, LLC and is a defendant in the herein action.   Your affiant has personal knowledge of the matters set forth herein.

3.    The Radiology Group, LLC ("TRG") is a party to a contract with Radiology Associates of Wyoming Valley, Inc. ("RAWV") whereby TRG provides teleradiology services for

compensation.  The contract was entered into in 2017.  A true redacted copy of the contract is attached at Exhibit 1.  Dr. Satish Patel is upon information and belief a principal in RAWV.

4.      Your affiant recently learned that Dr. Satish Patel has committed to testify for plaintiffs in this case subject to pending defense objections.  To this date, your affiant has no information as to the particulars of Satish Patel's putative testimony, only that it is expected to relate to so-called billing customs in rural areas.  The disclosure provided by plaintiffs is a mere one line note that states nothing of substance.

5.      On or about May 5, 2023, your affiant contacted Dr. Patel via email to inquire about the substance of his proposed testimony in this case.  My email is attached at Exhibit 1 along with a history of prior emails with Satish and his organization that demonstrate some of the history of the relationship.

6.      Inasmuch as TRG and RAWV are parties to an existing, ongoing contract that predated this litigation, your affiant as principal and managing member of TRG owed a duty to TRG and was most certainly entitled to make inquiry of Satish Patel as to what exactly he proposes to testify to, whether or not the plaintiffs have interfered with the parties preexisting contract, and to determine whether or not the parties' interests are now directly hostile to one another.

7.      TRG cannot blindly carry on in perpetuity in a contractual relationship with persons and entities that may be directly hostile to its interests.  Your affiant is obligated and duty bound to protect TRG's contractual interests and to make inquiry under the circumstances as to what exactly Satish Patel proposes to testify to.

8.      I did not intend my communication to be interpreted as a threat. My communication was not a threat nor was it intended to be viewed as a threat. Even more importantly, I did not intend to influence the testimony of Dr. Patel in any way, shape or form. Rather, the sole and

exclusive purpose of my communication was to make limited inquiry of the subject matter stated herein. To the extent Dr. Patel interpreted my communication in any way other than this sole stated goal, he is simply mistaken.

9.      I have reviewed, in detail, Plaintiffs' filing asking the Court to issue sanctions for this communication. I respectfully, but adamantly disagree with Mr. Maclin's mischaracterization of the communication. Having little to no familiarity with the long-standing business relationship between Dr. Patel and myself, Mr. Maclin is understandably not in a position to appreciate the context of my inquiry to Dr. Patel.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____

DR. ANAND LALAJI, MD

STATE OF GEORGIA
COUNTY OF ___Fulton___

SUBSCRIBED, SWORN TO, and ACKNOWLEDGED before me by Dr. Anand Lalaji, M.D., known to me personally or who first properly identified himself this the __10__ day of May 2023.

_____
NOTARY PUBLIC
__Kimberly Melioris__
NOTARY PRINTED NAME
My commission expires __July 28 2026__
Notary ID_____
Respectfully submitted

HAMM, MILBY & RIDINGS, PLLC
120 NORTH MAIN STREET

LONDON, KY 40741
EMAIL: aaron@hmrkylaw.com
PHONE: 606-864-4126
FAX: 606-878-8144
*Counsel for defendants, Gram Resources, Inc;*
*Hazard Radiology Associates, Inc.; Anand Lalaji,*
*M.D.; TRG Holdings G & H, LLC; and*
*The Radiology Group, LLC*

BY: /s/ R. Aaron Hostettler
     HON. R. AARON HOSTETTLER
     HON. JAMES MILBY RIDINGS
     HON. KELSEY LEE BRYANT


CERTIFICATE OF SERVICE:

    I hereby certify that a copy of the foregoing Motion was electronically filed with the Clerk of the Court by using the E-filing system and that a true and accurate copy of the foregoing has been served via the E-filing system and/or via first class U.S. Mail on the following:

COPY TO:

Hon. Robert E. Maclin III
Hon. Lisa English Hinkle
Hon. Luke Morgan
McBrayer, PLLC
201 East Main Street, Suite 900
Lexington, KY 40507

Hon. Barry Hunter
Frost Brown Todd, LLC
250 W. Main Street, Suite 2800
Lexington, KY 40507

Hon. Kimberly Childers, Judge
c/o angelashort@kycourts.net


    This __10th___ day of May 2023.

               /s/ R. Aaron Hostettler
               OF COUNSEL FOR DEFENDANTS